UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CHARLES HOWARD BOYD**             **CASE NO.  3:20-CV-01473**

**VERSUS**                          **JUDGE DOUGHTY**

**MONROE CITY HALL**                **MAGISTRATE JUDGE MCCLUSKY**

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim for relief filed by Defendant City of Monroe (incorrectly sued initially as "Monroe City Hall"). [doc. # 13]. The motion is unopposed. For the following reasons, it is recommended that the motion to dismiss be **GRANTED**.

Background

On November 17, 2020, Plaintiff Charles Howard Boyd, an African-American male, filed the instant action alleging that he suffered employment discrimination based on his age, disability, race, and color, in contravention of the Age Discrimination in Employment act, 29 U.S.C. § 621, *et seq* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* ("Title VII"). [doc. #s 1; 8]. Further, he alleges that he was subjected to a hostile work environment and was retaliated against for making complaints. [doc. #s 1; 8]. Plaintiff was employed as a custodian at the Monroe Regional Airport on February 6, 2017. [doc. # 1, p. 4]. In his complaint, Plaintiff cites several specific incidents that occurred during his two years of employment.

First, Plaintiff alleges that during his first few weeks of employment his supervisors Ronald Phillip and Obe Grayson made him scrub the floor in the bathroom on his knees. [doc. # 1, p. 4]. He filed a complaint against Phillips and Grayson in March 2017. [doc. # 1, p. 4]. Phillips and Grayson are both African-American males over forty years old. [doc. # 13-1, p. 8]. Plaintiff claims that after filing his grievance against Phillips and Grayson, he received a letter from the Director of Public Works, stating that the City "will not tolerate harassment in the workplace." [doc. # 13-1, p. 8]. Plaintiff alleges that Phillips nevertheless harassed and retaliated against him. [doc. # 13-1, p. 8].

Second, Plaintiff alleges that Phillips retaliated against him because he "became ill" when Phillips directed him to pull weeds outside in 75-85 degree weather on July 23, 2018. [doc. # 13-2, p. 9]. He claims that doing this work made him ill and that he had to be placed on medication. [doc. # 13-1, p. 9]. Plaintiff alleges he was on medical leave on July 30, 2018, and he came to work to provide proof of his illness on that day. [doc. # 1, p. 3]. When he arrived, Phillips gave him a pre-disciplinary letter dated July 27, 2018. [doc. # 1, p. 3]. Plaintiff alleges he was suspended for five days for not pulling weeds outside as directed and contends that this discipline was unwarranted because he had proven he was sick. [doc. # 13-1, p. 9].

Third, Plaintiff alleges that on June 6, 2019, he filed a complaint[1] against Phillips and another African-American custodian, James Goodin. [doc. # 13-1, p. 10]. Goodin allegedly almost hit Plaintiff in the parking lot with his vehicle one night and later bumped into Plaintiff's shoulder intentionally in the break room. [doc. # 13-1, p. 10]. Phillips told Plaintiff to file a police report, which he did, and he also filed a restraining order against Goodin. [doc. 13-1, p.

---

[1] Plaintiff does not discuss any complaint other than the police report and restraining order filed against Goodin.

10]. Phillips gave Goodin a verbal warning for the incident, but Plaintiff contends that Goodin should have been disciplined differently under City policies. [doc. # 13-1, p. 10].

Fourth, Plaintiff alleges that on June 28, 2019, he was directed to go outside and wash windows on a ladder for over seven hours. [doc. # 13-1, p. 11]. He claims that he went inside because the wind was "very high," but that after ten minutes he was told to go back outside and keep washing windows. [doc. # 13-1, p. 11]. Allegedly he became ill and had to go to the doctor who placed him on sick leave. [doc. # 13-1, p. 11]. Plaintiff provides no details about his sick leave, including reasons or dates of his leave; he simply attached a doctor's note to the complaint wherein his doctor states "Charles Boyd may return to work on 7-8-2019." [doc. # 1-2, p. 7].

On July 8, 2019, Plaintiff returned to work and was asked to wash windows outside again. [doc. # 13-1, p. 11]. He stated that he "was not going back outside because [he] was sick." [doc. # 13-1, p. 11]. Plaintiff was told that it was insubordination if he did not go outside and wash the windows. [doc. # 13-1, p. 11]. He left work to get a "corrected" doctor's note and returned with a note that said he "should refrain from working outside due to his medical condition and medications." [doc. # 1-2, p. 8]. Plaintiff allegedly had a hearing on July 17, 2019, at which he was accused of failing to perform work for two hours. [doc. # 13-1, 12-13]. Plaintiff claims he was discharged on August 8, 2019, for insubordination. [doc. # 13-1, p. 13].

On January 21, 2021, Defendant filed the instant motion to dismiss. [doc. # 13]. Therein, Defendant alleges: (1) Plaintiff's claim is untimely because he filed suit more than 90 days from receiving his notice of right to sue; (2) Plaintiff does not plausibly allege that age, disability, race, or color played a role in his termination; (3) Plaintiff has not shown that he was subjected to a hostile work environment, and (4) Plaintiff has not shown he was subjected to retaliation for

3

any protected complaints. The time to file a response has lapsed, and Plaintiff has not filed an opposition. Accordingly, this motion is ripe.

## Law and Analysis

When considering a motion to dismiss, the court must accept well-pled factual allegations in the complaint as true and must construe them in the light most favorable to the plaintiff. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)(citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998). "[P]ro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir.1981)). However, regardless of whether the plaintiff is proceeding pro se or is represented by counsel, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)). Courts must dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319 (1989). Additionally, "a complaint may be dismissed if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020).

1. **Plaintiff failed to file suit within 90 days of his receipt of the notice of right to sue.**

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor,* 296 F.3d at 378-79. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Id.* at 379 (citing *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788–89 (5th Cir. 1996)). Under Title VII, claimants have ninety days to file a civil action after receipt of such a notice from the EEOC.

*Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982) (citing 42 U.S.C. § 2000e–5(f)(1) (1994)). This ninety-day limitation period is strictly construed, even for pro se plaintiffs. *Taylor,* 296 F.3d at 379 (citing *Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir. 1986); *Espinoza v. Missouri Pacific R.R. Co.*, 754 F.2d 1247, 1251 (5th Cir. 1985)).

Courts in the Fifth Circuit have repeatedly dismissed cases where the plaintiff did not file a complaint until after the ninety-day limitation period had expired. *See, e.g., Taylor,* 296 F.3d at 378-79 (holding that a complaint was untimely where pro se plaintiff filed one day beyond the ninety-day period and dismissing the claims as untimely); *Butler v. Orleans Parish School Board*, No. Civ. A. 00–0845, 2001 WL 1135616 (E.D. La. Sept. 25, 2001) (dismissing Title VII claims where pro se plaintiff filed her complaint one day beyond the ninety-day period because she and her husband were prevented from filing on the 90th day, as planned, by family illnesses). Although filing of an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court." *Dao*, 96 F.3d at 789.

Here, Plaintiff claims he did not "receive" notice of his right to sue from the EEOC until September 21, 2020, despite that it had been sent to him via email on August 17, 2020, because the notice was in his spam folder. [doc. # 8, p. 2]. The Fifth Circuit has not directly addressed whether a notice of right to sue from the EEOC is "received" if the email is caught in a plaintiff's spam folder. However, in the context of Federal Rule of Civil Procedure 60(b)(1), which permits relief "from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect," the Fifth Circuit has declined to extend deadlines or award other relief just because an email is caught in a spam folder. FED. R. CIV. P. 60(b)(1).

For example, in *Moore v. Duncanville Independent School District*, the Fifth Circuit held that an attorney was not entitled to any extension of deadlines or other relief where he alleged

5

that he did not receive the opposition's motion for summary judgment. *Moore v. Duncanville Indep. Sch. Dist.*, 358 F. App'x 515, 517 (5th Cir. 2009). The attorney contended that he never received the motion, yet, during an evidentiary hearing in the district court, he conceded that he had electronically received the motion, but that it had been filed in a "spam" folder. *Id.* The Fifth Circuit reasoned that this circumstance did not justify an extension of deadlines or other relief. *Id.*

Likewise, in *Onwechekwe v. Okeke*, the Fifth Circuit held that the district court did not abuse its discretion in finding that "sending court communications to the spam folder is inexcusable neglect" even when an email setting deflects notice away from counsel's inbox. *Onwechekwe v. Okeke*, 404 F. App'x 911, 911-12 (5th Cir. 2010). There, an attorney filed for relief from a dismissal of a case based on excusable neglect, claiming that the court's email of opposing counsel's motion to dismiss was sent to spam and went unseen. *Id.* The Court reasoned that an extension was not warranted in this circumstance. *Id.; see also Trevino v. City of Fort Worth*, 944 F.3d 567 (5th Cir. 2019)(holding that "[e]mails mistakenly going to a spam folder do not merit Rule 60(b) relief" even when emails were diverted due to alleged antivirus software instead of faulty email settings"); *Drewery obo Felder v. Gautreaux*, No. CV 18-376-JWD-RLB, 2020 WL 5441230, at *5 (M.D. La. Sept. 10, 2020)(holding that emails mistakenly diverted to a spam folder are insufficient to justify vacating a judgment).

Here, the EEOC notice of right to sue was transmitted to Plaintiff by email on August 17, 2020, and he had ninety days from then, until November 15, 2020, to file suit. Since November 15, 2020 was a Sunday, Plaintiff had until November 16, 2020 to file. He filed suit one day late, on November 17, 2020. Plaintiff contends that although the notice was in his email on August 17, 2021, he did not see the notice until September 21, 2020, because it was in a spam folder.

6

Thus, he argues that the ninety-day period should run from September 21, 2020 rather than from August 17, 2020.

The Court is not persuaded that the diversion of the right to sue letter to plaintiff's spam folder justifies an extension of time for him to file his complaint. Like in *Moore* and *Onwechekwe*, where the diversion of an email to a spam folder did not justify an extension of deadline or other relief, here the diversion of the EEOC email to spam does not justify an extension of time for Plaintiff to file suit. The letter was in Plaintiff's possession since August 17, 2020, and he needed to file suit by November 16, 2020, to be timely.

Furthermore, unlike in *Moore* and *Onwechekwe,* where the deadline had already passed by the time the email was discovered in the spam folder, here Plaintiff discovered the email in his spam folder nearly two months before the ninety-day deadline. He had plenty of time after discovering the email in his spam folder to timely file suit within the ninety-day period. Accordingly, even if his *pro se* status might otherwise support some type of equitable extension, he is not entitled to one under these facts because the diversion did not actually cause him to miss the deadline to file suit. Fifth Circuit jurisprudence dictates that the ninety-day time limit be strictly construed, and Plaintiff's filing one day late renders his petition untimely. Thus, Plaintiff's claims must be DISMISSED WITH PREJUDICE.

2. **Plaintiff has failed to state a claim for discrimination under Title VII, the ADEA, or the ADA.**

    a. *Discrimination under Title VII*

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" based on race or color. 42 U.S.C. § 2000e-2(a)(1). Although Plaintiff need not submit evidence to establish a prima facie

case of discrimination at this stage, he must plead sufficient facts on all the ultimate elements of a disparate treatment claim to make his case plausible. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)(citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2814 (2015)). Under the *McDonnell Douglas* framework, Plaintiff would ultimately have to show that he: (1) is a member of a protected class; (2) was qualified the job; (3) was discharged or suffered some adverse employment action by the employer; and (4) was treated less favorably than other similarly situated employees outside the protected class was hired. *Berry v. Par.,* No. 20-30243, 2020 WL 6375855, at *2 (5th Cir. Oct. 26, 2020) (citing *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007))). Further, Plaintiff would have to show that Defendant took adverse employment action against him *because* of his protected status. *Rodgers v. Perdue*, No. 3:19-CV-00253, 2020 WL 814061, at *3 (W.D. La. Feb. 18, 2020)(citing *Raj*, 714 F. 3d at 331)(emphasis added).

Here, Plaintiff alleges that Defendant discriminated against him based on his race (black) and his color (dark-skinned). However, he does not indicate whether he was replaced by someone of a different race or color than him. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)(whether an employee is replaced by someone outside the protected class is material the question of discriminatory intent, though not determinative). Further, his allegations do not make it plausible that he was "treated less favorably than other similarly situated employees outside the protected group" or that race, or color was the reason for any adverse employment action. All of the individuals Plaintiff claims to have adversely affected his employment are African American like himself.[2] Plaintiff alleges that "[c]ustodians, either not in

---

[2] Plaintiff does not indicate the individuals' skin colors.

the PAG, White, or light-skinned Blacks," were not assigned the undesirable duties he was or made to work in the undesirable conditions he was. [doc. # 1-2, p. 4-6]. However, this allegation falls short of alleging less favorable treatment than other similarly situated employees outside the protected group; rather, Plaintiff's allegation indicates his "dissatisfaction that he was treated poorly as compared to *all* other employees," rather than specifically employees outside of the protected class. *Shaw v. City of W. Monroe*, No. CIV. A. 12-0318, 2013 WL 1385628, at *4 (W.D. La. Apr. 3, 2013)(citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)). Title VII protects employees only from discriminatory business practices, not merely unfair practices. *Id.*

Finally, Plaintiff's allegations do not tend to indicate that adverse employment action was taken against Plaintiff *because* of his race or color. *See Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014)(defining adverse employment action in the context of racial discrimination). The adverse employment actions alleged by Plaintiff are (1) a five-day suspension for refusing an order to pull weeds, (2) not disciplining Goodin to his satisfaction, and (3) termination for refusing to wash windows. Plaintiff does not indicate how race or color played any role in those decisions, and instead just asserts in a conclusory manner that he has been discriminated against based on race and color. Accordingly, Plaintiff's Title VII claims of discrimination based on race and color should be DISMISSED.

   b. *Discrimination under the ADEA*

Under the ADEA, "it is unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Like with Title VII claims, the *McDonnell Douglas* analysis is helpful in determining

if Plaintiff has stated a claim for relief. *Louis v. Hampton Inn Bossier City*, No. CV 18-0214, 2018 WL 6331702, at *4 (W.D. La. Dec. 4, 2018)(citing *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)).

To establish a prima facie case of discrimination under the ADEA, Plaintiff must show that (1) he was discharged, (2) he was qualified for the position, (3) he was within the protected class at the time of discharge, and (4) he was replaced by someone younger or someone outside of the protected class, or otherwise terminated because of his age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011). "[L]iability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000).

Plaintiff was 68 years old at the time of his discharge, but he does not identify who replaced him or if that person was younger than him. Further, Plaintiff was a member of the protected class at the time of his hiring just two years prior to his dismissal, which indicates that age was not a factor in the adverse employment decision. *See Shaw*, 2013 WL 1385628, at *5. Finally, Plaintiff does not allege how age played a role in any of the adverse employment actions taken against him, he merely states that he was 68 years old when he was terminated. Accordingly, his claims under the ADEA should be DISMISSED.

    c. *Discrimination under the ADA*

Under the ADA, "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on an ADA claim Plaintiff must ultimately "establish that (1) he is disabled within the meaning of the ADA, (2) he is qualified

and able to perform the essential functions of his job, and (3) his employer fired him because of his disability." *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010) (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999)). A disability within the meaning of the ADA is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff's allegations must make is plausible that disability was a "motivating factor" in the alleged adverse employment action. *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (adopting "motivating factor" standard).

Here, Plaintiff alleged generally that he became ill from pulling weeds outside in warm weather in July 2018. [doc. # 1, p. 3]. He stated that he later went on medical leave, and that upon returning to work he received a pre-disciplinary letter relating to pre-leave conduct and was suspended for five days. [doc. # 1, p. 3]. Plaintiff does not state for what condition he went on medical leave. [doc. # 1, p. 3-4]. Likewise, in June 2019, when Plaintiff was asked to wash windows outside, he said he became ill and went to the doctor who allegedly placed him on sick leave. [doc. # 1, p. 3-4]. Again, neither Plaintiff nor his doctor's note disclosed what the medical condition was; the note merely stated that he could return to work on 7-8-2019. [doc. # 1-2, p. 8]. After being told he would be disciplined for insubordination when he refused to work outside again upon returning to work on July 8, 2019, only then did he go get a "corrected" doctor's note saying that he should refrain from working outside because of his condition. [doc. # 1-2, p. 8].

Plaintiff has failed to state any facts to plausibly show that he has any disability. The alleged "medical condition" is never specified, and the only supporting documentation is a July

11

2019 doctor's note[3] stating that Plaintiff should refrain from outside work due to his medical condition and medications. *See Neely v. PSEG Texas, Ltd. P/ship*, 735 F.3d 242, 245 (5th Cir. 2013)(citing *Gober v. Frankel Family Trust*, 537 F. App'x 518, 520 (5th Cir. 2013))(holding that to prevail on a claim of disability discrimination under the ADA, the plaintiff must prove he has a disability). A disability is an impairment or perceived impairment that limits one or more major life activities. 42 U.S.C. § 12102(1)(A).

The Fifth Circuit has rejected certain medical conditions, such as heat exhaustion, as a disability where Plaintiff failed to show how it limited a major life activity. *See Dottin v. Texaz Dep't of Criminal Justice*, No. 1:13-CV-710, 2014 WL 11498078, at *8 (E.D. Tex. Nov. 25, 2014), *aff'd*, 627 F. App'x 397 (5th Cir. 2015). Here, Plaintiff has not alleged any facts whatsoever from which the court could reasonably infer that he has a disability within the meaning of the ADA. A vague doctor's excuse devoid of any facts about the medical condition is not enough, and Plaintiff gave no other information about how the purported disability limited a major life activity. Plaintiff has also failed to show that he had a record of an impairment substantially limiting a major life activity, or that his employer regarded him as having such an impairment. Thus, there is simply not enough information in the complaint to make the logical leap that Plaintiff could plausibly have a disability.

Plaintiff has also not alleged any facts that would indicate that disability was a motivating factor in his employer's actions. Regarding both the July 2018 weed-pulling incident and the June 2019 window-washing incident, Plaintiff claims that he started to feel ill while doing the work and provided doctors notes only after he faced disciplinary action. Specifically, the July

---

[3] The doctor's note that purportedly says plaintiff should not work outside was written after he got in trouble several times for refusing to work outside.

2019 doctor's note stating that he should refrain from outside work due to his condition was not shown to his supervisors until after he had been told it would be insubordination if he didn't wash windows. Plaintiff has not shown that his alleged disability could plausibly be related to his termination, or even that his supervisors knew or should have known he had a disability prior to initiating disciplinary action against him. *See also Jones v. Smith,* 109 F. App'x 304, 309 (10th Cir. 2004)(holding that a prisoner failed to state a claim under the ADA where his petition did not provide facts to show that he was assigned to an improper work station because of his disability, reasoning that the assignment could have been made for any of a number of other reasons based on the facts in the complaint including incompetence or personal spite). Accordingly, Plaintiffs claims for discrimination under the ADA should be DISMISSED.

### 3. Plaintiff has failed to state a claim for hostile work environment.

Title VII, the ADA, and the ADEA all encompass claims for a hostile work environment. *See, e.g., Rogers v. E.E.O.C.*, 454 F.2d 234, 238–39 (5th Cir. 1971) (recognizing racially hostile work environment under Title VII); *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001)(recognizing hostile work environment under the ADA); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011)(recognizing hostile work environment under the ADEA). Actions under all three statutes have similar elements, and to prevail under any one a plaintiff-employee must show: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment based on the protected characteristic; (3) that the alleged harassment affected a term, condition, or privilege of employment by creating an objectively intimidating, hostile, or offensive work environment; and (4) there is some basis of liability for the employer. *Rogers*, 454 F.2d at 238–39; *Flowers*, 247 F.3d at 235–36; *Dediol*, 655 F.3d at 441.

A hostile work environment is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The complained-of conduct must be both objectively and subjectively offensive. *Dediol*, 655 F.3d at 441 (citing *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007)). Not only must Plaintiff perceive the environment to be hostile, but it must also appear hostile or abusive to a reasonable person. *Id.* (citing *WC&M Enters.*, 496 F.3d at 399). This determination "depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) (citing *Harris*, 510 U.S. at 21-22). The United States Supreme Court has noted that hostile work environment jurisprudence does not "prohibit all verbal or physical harassment in the workplace." *Dediol*, 655 F.3d at 443 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Here, for the same reasons discussed in the preceding sections, Plaintiff has not given any facts to show plausibly that he experienced "unwelcome harassment" *based on* any of his protected characteristics including race, color, age, and allegedly disability. Further, Plaintiff has not pleaded sufficient facts to show that any conduct was severe or pervasive enough to constitute harassment. Plaintiff alleges (1) he was made to scrub the floor in the bathroom on his hands and knees a few weeks after starting work, (2) he was suspended for failing to pull weeds, (3) he felt threatened by a co-employee and was not satisfied with the discipline that was meted out to that employee, and (4) he was terminated for failing to follow a supervisor's orders and

wash the windows. He was employed over a two-year span and has not pointed to any incidents aside from the forementioned. Despite Plaintiff's conclusory allegation that he was harassed pervasively, these incidents are isolated rather than severe and pervasive. Further, the complaint does not tend to show that these incidents were physically threatening or humiliating to a degree that would unreasonably interfere with Plaintiff's work performance. Plaintiff was hired as a custodian, and scrubbing the bathroom floor, pulling weeds, and washing windows are not "humiliating" tasks for a custodian to perform; a reasonable person would not find it hostile or abusive to be asked, while working as a custodian, to clean and maintain facilities.

Further, although Plaintiff alleges that he was made to scrub the bathroom floor on his knees when other custodians were not made to scrub it in that manner, he points to only one isolated incident where this allegedly happened over his two-year employment. He also fails to provide any facts showing that he was asked to scrub the floor in that particular manner because of his protected status. Finally, Plaintiff's complaint that the disciplinary action taken against Goodin was insufficient is not "physically threatening or humiliating" conduct. Goodin was disciplined for his actions, just not in the precise manner Plaintiff wanted. Accordingly, because Plaintiff has not pleaded sufficient facts to plausibly show that he was harassed, or that the alleged harassment was because of any of his protected statuses, his claims for hostile work environment should be DISMISSED.

**4. Plaintiff has failed to state a claim for retaliation.**

Title VII, the ADA, and the ADEA have similar anti-retaliation provisions. Title VII forbids employers to "discriminate against" an employee because he has "opposed" a practice that Title VII prohibits or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a). Nearly identically, the ADA

15

prohibits an employer from "discriminat[ing] against" any individual because he "has opposed any act or practice" prohibited by the ADA or because he has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). The ADEA prohibits discrimination against an employee because he "has opposed any practice" made unlawful under the ADEA or has "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or litigation" under the ADEA. 29 U.S.C. § 623(d).

To establish a prima facie case of retaliation under Title VII, the ADA, or the ADEA, Plaintiff ultimately must show that (1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citations omitted) (discussing retaliation under Title VII and the ADA); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001)(discussing retaliation under the ADEA). The retaliatory action must be such that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006).

Not every complaint made by an employee against his employer is a "protected activity" under Title VII, the ADEA, and the ADA. The Fifth Circuit has held that "a vague complaint, without any reference to an unlawful employment practice . . . does not constitute protected activity." *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015). Further, a plaintiff who merely alleges that he made complaints is insufficient to invoke the protection against retaliation. *See Jenkins v. Louisiana Workforce Comm'n*, 713 F. App'x 242, 246 (5th Cir. 2017)(affirming dismissal of retaliation complaint under "opposition" clause where "the complaint ma[de] no

16

allegation that [the plaintiff's] grievance was opposing or protesting racial or sexual discrimination."); *see also Lopez v. Donahoe*, 94 F. Supp. 3d 845, 859 (S.D. Tex. 2015) (explaining that "participation in a complaint that fails to allege discrimination . . . is not considered protected activity").

      Here, Plaintiff merely alleges that he made complaints and fails to allege that any of his complaints referenced an unlawful employment practice under Title VII, the ADEA, or the ADA. He alleges that he complained (1) against Grayson for making him perform an undesirable job when he had to scrub the bathroom floor on his hands and knees and saying Plaintiff "needed to get another job" and that the job would get harder, and (2) against Phillips and Goodin for Goodin not being disciplined harshly enough for bumping into him in the break room. Nowhere in his petition does Plaintiff indicate that these complaints were made based on actions that were taken because of any of his protected statuses. Accordingly, there are no facts to plausibly establish that these complaints are "protected activities" within the meaning of Title VII, the ADEA, or the ADA. Further, Plaintiff fails to allege facts that support a causal connection between the complaints and his dismissal; he merely states in a conclusory fashion that Philips accused him of insubordination for refusing to wash windows outside after Plaintiff had filed a complaint against Phillips and that subsequently Plaintiff was dismissed. Thus, Plaintiff has not stated a claim for retaliation under Title VII, the ADEA, or the ADA, and his claims must be DISMISSED.

## **Conclusion**

      For the above assigned reasons,

IT IS RECOMMENDED that Defendant's motion to dismiss for failure to state a claim [doc. # 13] be GRANTED, and Plaintiff's claims be DISMISSED, with prejudice. FED. R. CIV. P. 12(b)(6).

Under the provisions of 28 U.S.C. ' 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 8th day of March, 2021.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE